IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARCIA ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1007(GK) |
| ) | |
| LEONIDAS RALPH MECHAM, CHAIRMAN, ) | |
| ADMINISTRATIVE OFFICE ) | |
| OF THE U.S. COURTS, ) | |
| ) | |
| Defendant. ) | |

PLAINTIFF GARCIA ALLEN'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS IN LIEU OF AN ANSWER

COMES NOW Plaintiff Garcia Allen ("Mr. Allen"), by and through Counsel, and opposes the Motion to Dismiss in Lieu of an Answer ("Motion to Dismiss") filed by the Defendant Leonidas Ralph Mecham. Plaintiff requests that the Court deny Defendant's Motion and instead declare, as a matter of law, that Defendant's unilateral and unrestricted selection of a hearing officer, as mandated under Chapter I, § F.8. of its FEPS Human Resources Manual, violated of Mr. Allen's procedural due process rights provided under the Fifth Amendment to the U.S. Constitution.

## Introduction

On June 13, 2003, Mr. Allen filed a formal Equal Employment Opportunity ("EEO") complaint of discrimination against the Administrative Office of the United States Courts ("AOUSC"). AOUSC required Mr. Allen to prosecute his claims through procedures set forth in the Fair Employment Practices System ("FEPS"). On February 15, 2005, the hearing officer presiding over Mr. Allen's claim notified Mr. Allen in writing that his recommended decision was to find in favor of AOUSC. On May 18, 2005, Mr. Allen filed a complaint with this Court, not because he received an adverse judgment as a result of the hearing conducted pursuant to FEPS but because his constitutional due process rights were violated when he did not receive a <u>fair</u> hearing under FEPS.

Under FEPS, AOUSC is afforded the unilateral and unrestricted authority to select a hearing officer to resolve employment discrimination complaints asserted against it without any input from the complainant – in this case, from Mr. Allen. In Mr. Allen's case, not only did AOUSC unilaterally select the hearing officer, but AOUSC also compensated the hearing officer out of its own funds for his time while he made an unappealable adjudication of whether AOUSC was liable out of its own funds for damages that might it might owe to Mr. Allen. Because the hearing officer is the officiator throughout the life of litigation, FEPS thus provides AOUSC with the authority to control all aspects, including the outcome, of a complainant's employment discrimination claim. Thus, by controlling the outcome of all aspects of Mr. Allen's grievance process at all turns of the proceedings, AOUSC violated Mr. Allen's constitutional right to due process under the 5th amendment of the Constitution.

## Summary of Argument

Mr. Allen's Complaint sets forth a solitary cause of action: "Defendant Administrative Office of United States Courts' unilateral and unrestricted selection of a hearing officer, as mandated under Chapter I, § F.8. of its FEPS Human Resources Manual, was an intentional violation of Plaintiff Garcia Allen's procedural due process rights provided under the Fifth Amendment to the U.S. Constitution." (Complaint at 10). In its Motion to Dismiss, AOUSC mischaracterizes the nature of this claim by positing that Mr. Allen is seeking judicial review of a final agency decision (Motion to Dismiss at 7) and by suggesting that Mr. Allen is asking the Court to declare that FEPS (and not the one provision of same identified by Mr. Allen) should be declared unconstitutional (Motion to Dismiss at 8-9).

Moreover, AOUSC errantly suggests that Mr. Allen's claimed property interest is not his statutorily-derived property interest in receiving a fair hearing under FEPS, but rather "the job he holds" (Motion to Dismiss at p. 13) or the promotion that he did not receive (and that was the basis for his discrimination complaint). (Motion to Dismiss at 13). Finally, AOUSC submits to the Court that the FEPS discrimination complaint resolution program's hearing procedures wherein the AOUSC unilaterally selects and compensates a hearing officer to resolve a complainant's claims is not akin to an arbitration (even though both are dispositive of the complainant's claims and provide for no right of appeal) but rather is much like the proceedings in this Court. (Motion to Dismiss at 17). Unlike the FEPS proceedings, however, federal court rules do not permit the parties to select their judge, and they expressly provide both parties with the right to appeal should they feel the trial and/or the court's ruling was unfair.

**Argument**

I.   **Mr. Allen Is Not Seeking Judicial Review Of The Defendant's Decision, Rather He Is Seeking To Have It Voided Because The Process In Which It Was Procured Violated Mr. Allen's Fifth Amendment Right To Due Process.**

As noted in Mr. Allen's Complaint, Mr. Allen's action arises out of AOUSC's utilization of FEPS to resolve his complaint of discrimination against AOUSC because it AOUSC Defendant with unilateral and unrestricted selection of a hearing officer in FEPS § F.8.[1] (*See* Compl. at 2.) Mr. Allen is not challenging his lack of a right to judicial review under FEPS. Further, Mr. Allen understands that under § 3(f) of the AOUSC Personnel Act of 1990, he has no right to file any appeal with the Equal Employment Opportunity Commission or the federal district courts, as he is an employee hired after the date of enactment of the Act.[2] Accordingly, any suggestion by AOUSC that Mr. Allen is inappropriately seeking judicial review under FEPS is without merit.

II.   **Mr. Allen is Entitled to Challenge His Right to Due Process Under FEPS.**

AOUSC contends that Mr. Allen essentially is attempting to sidestep the "doctrine of substantive-procedural non-severability" by attacking the very statute under which he has simultaneously claimed benefits. (Motion to Dismiss at 8). In support of this assertion, AOUSC directs this Court's attention to *Arnett v. Kennedy*, 416 U.S. 134 (1974). (*See id.*) The line drawn by AOUSC, however, is not so clear cut as AOUSC would have this Court

---

[1]   FEPS is set forth in the AOUSC's Human Resources Manual, which details and proscribes Defendant's fair employment practices and policies regarding the resolution of Equal Employment Opportunity ("EEO") complaints.

[2]   The Director of the Administrative Office of the United States Courts established FEPS in order to comply with the Administrative Office of the United States Courts Personnel Act of 1990, HR 4174 (which on October 30, 1990, became Public Law No: 101-474).

4

believe. Moreover, the scale tips heavily in favor of Mr. Allen's claim upon scrutinizing AOUSC's position, as the *Arnett* decision has been renounced by the very court that issued it.

*Arnett*'s holding, upon which Defendant relies, was a plurality opinion comprised of only three justices. In fact, each of the six justices who did not vote with the plurality specifically rejected this notion of taking the "bitter along with the sweet," noting that the right to due process is not a right conferred by the legislature, but rather, is one conferred by the Constitution. *See id.* at 166-67, 177-78, 211. In fact, in concurring with the plurality reasoning but not its result Justice Powell expressed that the plurality's analytical approach would "lead directly to the conclusion that whatever the nature of an individual's statutorily created property interest, deprivation of that interest could be accomplished without notice or a hearing at any time." *Id.* at 166-67. Justice Powell further opined that the plurality overlooked the fact that due process is a <u>constitutional</u> right that is not conferred by legislators:

> [The plurality's] view misconceives the origin of the right to procedural due process. That right is conferred, not by legislative grace, but by <u>constitutional guarantee</u>. While the legislature may elect not to confer a property interest in federal employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.

*Id.* at 167 (emphasis added). Thus, though AOUSC may elect not to confer a property interest in a fair trial, once it has done so it may not authorize a deprivation of that property right without first implementing appropriate safeguards.

In 1985, eleven years after the *Arnett* opinion, a <u>majority</u> of the Supreme Court found fault with the *Arnett* plurality's reasoning that a litigant such as Mr. Allen must "take the bitter with the sweet." *See Cleveland Board of Ed. V. Loudermill, et al.*, 470 U.S. 532, 540-41 (1985). In *Loudermill*, the Supreme Court noted that it had clearly rejected the *Arnett*

5

plurality's reasoning in 1980 when it determined that "'minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action.'" *Id.* at 541 (quoting *Vitek v. Jones*, 445 U.S. 480 (1980)). Continuing, the Supreme Court expressly admonished the plurality's "bitter with the sweet" reasoning and openly adopted Justice Powell's logic:

> In light of these holdings, it is settled that the "bitter with the sweet" approach misconceives the constitutional guarantee. If a clearer holding is needed, we provide it today. The point is straightforward: <u>the Due Process clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to the constitutionally adequate procedures.</u> The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate safeguards."

*Id.* (emphasis added) (quoting *Arnett*, 416 U.S. at 167 (Powell, J., concurring in part and concurring in result in part)).

The Supreme Court has clearly clarified that the procedural right to due process is a <u>constitutional</u> right, and thus AOUSC is wrong when it suggests that Mr. Allen cannot concurrent lay claim to a civil rights remedy under FEPS and his right to due process under the 5th Amendment. Mr. Allen's right to fair hearing as due process is a constitutional one; further, it is a right that AOUSC <u>elected</u> to confer upon Mr. Allen through FEPS. When AOUSC deprived Mr. Allen a fair hearing, AOUSC violated Mr. Allen's <u>constitutional right</u> to due process under the 5th Amendment. Therefore, any claim that Mr. Allen inappropriately seeks to forego the bitter and savor the sweet is irrelevant to this Court's analysis.

FEPS § F.8. required Mr. Allen to resolve his EEO complaint before a hearing officer selected by AOUSC without any input or consideration by Mr. Allen.[3] Because FEPS sets forth the exclusive legal rights and remedies for all full-time, part-time, and temporary employees hired after 1990 that make employment discrimination claims, Mr. Allen had no choice but to accept this unfair provision in his efforts to secure a fair hearing of his discrimination complaint. Moreover, Mr. Allen has no means of appellate review to contest AOUSC's unilateral and exclusive control over the selection and compensation of the hearing officer who served as the ultimate arbiter of all aspects of his discrimination claim.

AOUSC also insinuates that by filing his 5th Amendment Due Process Complaint against AOUSC, Mr. Allen is challenging the constitutionality of FEPS in its entirety. (*See* Motion to Dismiss at 8-9.) Mr. Allen, however, is not asking the Court to declare FEPS unconstitutional in its entirety. Rather, he is asking the Court to require AOUSC to modify one single but significant aspect of FEPS – Chapter I, § F.8. of its Fair Employment Practices Systems Human Resources Manual – so as to provide all of its employees with the right to jointly select the hearing officer who will resolve their discrimination claims on the basis of race, color, religion, age, sex, national origin, political affiliation, marital status, or disability. Such a request is certainly not inapposite with the Supreme Court's reasoning, nor is it contradictory to FEPS' presumed intent to provide AOUSC employees with a fair trial.[4]

---

[3]   Though AOUSC claims otherwise, Mr. Fine, the hearing officer chosen by AOUSC to preside over Mr. Allen's employment discrimination claim was for all intents and purposes employed by AOUSC. Mr. Fine is a contractor paid by AOUSC to serve as a hearing officer in matters in which AOUSC is a party and in which AOUSC may ultimately have liability out of its own monies. The parameters of his employment are defined by AOUSC, and he was in no manner accountable to Mr. Allen at any stage of the hearing process.

[4]   Established ADR programs have long recognized that joint selection of an arbitrator is an essential component of any neutral arbitration system. *See e.g.,* the Judicial Arbitration

7

Accordingly, Mr. Allen respectfully requests this Court to deny Defendant's Motion to Dismiss.

---

and Mediation Services, Inc.'s (JAMS) Minimum Standards of Procedural Fairness and the American Arbitration Association's (AAA) Due Process Protocol:

1. JAMS' Minimum Standards of Procedural Fairness:

    B. Minimum Standards of Procedural Fairness
    If an arbitration is based on a clause or agreement that is required as a condition of employment, JAMS will accept the assignment only if the proceeding complies with the "Minimum Standards of Procedural Fairness for Employment Arbitration."
    …

      Standard No. 2: Arbitrator Neutrality.
      The arbitrator(s) must be neutral, and an employee must have the right to participate in the selection of the arbitrator(s).

2. AAA's Due Process Protocol

    12. Number and Appointment of Neutral Arbitrators
    …
      b. If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:
      …

        (ii) Each party shall have 10 days from the date of the letter in which to select the name of a mutually acceptable arbitrator to hear and determine their dispute. If the parties cannot agree upon a mutually acceptable arbitrator, they shall so notify the AAA. Within 10 days of the receipt of that notice, the AAA shall send the parties a shorter list of arbitrators who are members of the regional Employment Dispute Resolution Roster. Each party shall have 10 days from the date of the letter containing the revised list to strike any names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all of the listed persons shall be deemed acceptable to that party.

### III. Mr. Allen Has a Protected Property Interest in Receiving a Fair and Unbiased Hearing Under FEPS.

Under the due process clause of the 5th Amendment, the federal government may not deprive any person of life, liberty, or property without due process of law. *See* U.S. Const. amend. 5. "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). Moreover, "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). These fundamental due process rights apply to administrative agencies that adjudicate as well as to courts. *See Gibson v. Berryhill*, 411 U.S. 564, 579 (1973). Mr. Allen's property interest in this matter is his right to a fair hearing on the merits of his case. *See* FEPS § D.1. ("<u>Employees are to receive fair and equitable treatment in personnel actions, and in all aspects of personnel management...</u>" (Emphasis added)).

In *Goldberg v. Kelly*, 397 U.S. 254, 261-262 (1970), the Supreme Court held that welfare benefits "are a matter of statutory entitlement for persons qualified to receive them." Hence, in *Goldberg* the Court recognized statutory entitlements as property interests under the Constitution. *Goldberg*, 397 U.S. at 261-262 n. 8 ("welfare entitlements are more like 'property' than a 'gratuity.'"); *see also Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) (protected property rights are created by such sources as statutes granting persons certain benefits). Accordingly, the AOUSC Personnel Act of 1990 (under which FEPS was implemented) grants Mr. Allen, as an AOUSC employee, a statutory entitlement to a fair adjudication of his discrimination complaints, as AOUSC's utilization of FEPS is the exclusive resolution program for its employees' discrimination complaints per Congressional statute. *See* 28 U.S.C.A. §601 *et seq.* (2005), PL 101-474, 104 Stat 1097 §2(a)(4) (Oct. 30, 1990) (granting the Director of AOUSC the authority to "appoint, fix the compensation of,

9

assign, and direct such personnel as the Director determines necessary to discharge the duties and functions of the Administrative Office…[and] to 'establish procedures for… resolution of employee grievances.'")

In its Motion to Dismiss AOUSC cites the Court to the *Board of Regents v. Roth*, 408 U.S. 564 (1972), as authority for its claim that Mr. Allen "has no property interest upon which to base a due process claim." (Motion to Dismiss at 10.) *Roth*, however, clearly delineates that statutes such as the AOUSC Personnel Act of 1990 create a property interest in a benefit:

> Certain attributes of "property" interests protected by procedural due process emerge from these decisions. <u>To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.</u> It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. <u>It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.</u>
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg v. Kelly, supra*, had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so.

*Roth*, 408 U.S. at 577 (emphasis added). Thus, refuting Defendant's assertion to the contrary, *Roth* recognizes that where a person has a "legitimate claim of entitlement" to a property interest protected by procedural due process, he must have a fair opportunity to vindicate his claims of entitlement. *See id.* In the matter before the Court, § 3.a.9. of the AOUSC Personnel Act of 1990 provides Mr. Allen with just that. Section 3.a.9. mandates that AOUSC shall establish a personnel system prohibiting discrimination, "on the basis of race,

10

color, religion, age, sex, national origin, political affiliation, marital status, or handicapping condition" and that "the Director must promulgate regulations providing procedures for resolving complaints of discrimination by employees and applicants for employment."

Moreover, in *Goss v. Lopez*, 419 U.S. 565 (1975), the seminal case establishing the due process rights of students in public school disciplinary proceedings, the Supreme Court held that students had a property interest in education that required due process protections before any disciplinary suspension could be imposed. *Goss*, 419 U.S. at 573. The Court found that the property interest in education derived from an Ohio statute providing free public education to all children from five though twenty-one years and requiring compulsory education for a minimum of thirty-two weeks per school year. *Id.*

Accordingly, because the AOUSC Personnel Act of 1990 confers upon Mr. Allen benefits including, *inter alia*, a right to the fair and unbiased adjudication of employment discrimination complaints in its employment discrimination resolution program, Mr. Allen cannot be deprived of his right to the fair and unbiased adjudication of his employment discrimination complaint without due process of law. Because Mr. Allen's property interest in receiving a fair hearing to resolve his employment discrimination claims is grounded in the AOUSC Personnel Act of 1990, AOUSC's argument that Mr. Allen's claimed property interest in either "the job he holds" or "the promotion itself or the pay-raise (if any) accompanying the promotion" is inapposite to the analysis presently before the Court. Motion to Dismiss at 13.

Moreover, AOUSC engages in a dramatic show of stumbling over the real property interest at issue in this action, attempting to downplay the very crux of Mr. Allen's Complaint. It does this when it declares that, "[Mr. Allen] merely alleges that he was not

11

treated fairly in the promotion process. Regardless of whether this is true, the Due Process Clause cannot serve as his remedy because federal employees do not have a reasonable expectation to promotion as would be required." Motion to Dismiss at p. 13. AOUSC's argument is reminiscent of Dick Van Dyke's hackneyed act of failing to see the ottoman over which he will soon stumble, because AOUSC's concerted effort to gloss over Mr. Allen's real property interest in a fair hearing under FEPS betrays its sleight of hand in which it attempts to coax the reader into not seeing the obvious so the they might instead believe that Mr. Allen is actually asserting that he has a property interest in something other than his right to a fair hearing. However, AOUSC's feigned incognizance of the actual property interest asserted by Mr. Allen is not a valid basis for dismissal of Mr. Allen's action. Accordingly, AOUSC's argument is without merit.

IV. **AOUSC's FEPS Discrimination Complaint Resolution Program's Hearing Procedure Wherein The Defendant Unilaterally Selects And Compensates A Hearing Officer To Resolve A Complainant's Claims Is Indistinguishable From Mandatory Arbitration.**

AOUSC's Motion to Dismiss clearly recognizes that Mr. Allen is entitled to a fair hearing of his employment discrimination claims under FEPS, explaining that "[A] 'fair trial in a fair tribunal is a basic requirement of due process...'" (Motion to Dismiss at 10) (*citing Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975)). It is also important to note that while AOUSC relies on *Withrow* as authority for the position that there is "a presumption of honesty and integrity in those serving as adjudicators," (Motion to Dismiss at 15), *Withrow* also dictates that "various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a

pecuniary interest in the outcome." *Withrow*, 421 U.S. at 47. AOUSC also refers the Court to the Supreme Court's opinion in *Schweiker v. McClure*, 456 U.S. 188, 195 (1982), as the basis for asserting that "there is a presumption that these [hearing] officers are unbiased." (Motion to Dismiss at 15.) However, the *Schweiker* Court later explained that the hearing officers in *Schweiker* were appointed by insurance carriers but their salaries were paid by the federal government. *Id.* at 196. Moreover, the Court noted that the insurance carriers paid all of the claims in question "from federal, and not their own, funds." *Id.* at 196. The *Schweiker* Court thus concluded that, in light of the forgoing, "[i]n the absence of proof of financial interest on the part of the carriers, there is no basis for assuming a derivative bias among their hearing officers." *Id.* at 197. In the matter before the Court, however, FEPS allows AOUSC to unilaterally select a hearing officer (whom it will pay with its own funds) to make a liability determination that, if AOUSC is found liable, will cause AOUSC to have to pay out even more of its own funds. Accordingly, under the *Schweiker* Court's logic the presence of a clear financial interest on the part of AOUSC is a solid basis for assuming and imputing a derivative bias among its unilaterally appointed hearing officers.

Moreover, AOUSC is wrong in its contention that the 5th Amendment does not guarantee Mr. Allen input into the selection process of his hearing officer. (Motion to Dismiss at p. 10). This is because AOUSC predicates this contention on the fallacious presupposition that the FEPS procedures afforded to Mr. Allen are comparable to procedures before this very Court: "[Mr. Allen's] argument is akin to a plaintiff in district court alleging a due process violation because he wasn't able to help pick which judge of the court would hear his case." (Motion to Dismiss at 17). AOUSC's analogy is misplaced because the procedural mechanism implemented by FEPS is not at all reminiscent of the federal judicial process.

Rather, the procedure in FEPS is indistinguishable from a mandatory arbitration from which there is no right of appellate review and where the arbitrator is selected and compensated exclusively by one party.[5] Hence the FEPS complaint resolution process is wholly unlike a case before the district court, as when a matter is before the district court neither party unilaterally selects and then compensates the judge. Moreover, when a matter is before the district court a dissatisfied party has an unambiguous right to appellate review to pursue and address any perceived errors on the part of the judge.

Chapter I, § F.8. of FEPS requires Mr. Allen to resolve his EEO complaint before a hearing officer selected and employed exclusively and without restriction by AOUSC. However, a government entity's unrestricted choice of an arbitrator in an employment matter is violative of due process requirements. *See Robinson v. State of New Jersey*, 806 F. 2d 442, 450 (3rd Cir. 1986) (noting that if a union executed unrestricted selection of arbitrator, such action would violate due process). Accordingly, Chapter I, § F.8.'s requirement that Mr. Allen's discrimination claims be resolved by a hearing officer selected and employed exclusively and without restriction by the Defendant is so fundamentally unfair that it renders the hearing officer selection procedure invalid. *See McMullen v. Meijer, Inc.*, 355 F.3d 485, 494 (6th Cir. 2004) ("…Meijer's TAP grants one party to the arbitration unilateral control over the pool of potential arbitrators. This procedure prevents Meijer's TAP from being an effective substitute for a judicial forum because it inherently lacks neutrality…" and is thus unconscionable); *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 308 n. 21, 309 (1986)

---

[5] "Arbitration" is defined as "[a]n arrangement for taking and abiding by the judgment of selected persons in some disputed matter, instead of carrying it to established tribunals of justice, and is intended to avoid the formalities, the delay, the expense and vexation of ordinary litigation" *Addie v. Kjaer*, 2005 WL 1130224, *3 (D. Virgin Islands 2005); *see also Black's Law Dictionary* 105 (6th ed.1990).

14

("[A]n expeditious arbitration might satisfy the requirement of a reasonably prompt decision by an impartial decisionmaker, so long as the arbitrator's selection did not represent the Union's unrestricted choice.") [6]

Because FEPS is, in actuality, mandatory arbitration, and because it requires Mr. Allen to resolve his EEO complaint before a hearing officer selected and employed exclusively and without restriction by AOUSC, the provision in FEPS that grants AOUSC unilateral control over the selection of an arbitrator violates Mr. Allen's 5th Amendment right to due process.

---

[6] Mr. Allen also refers the Court to the Fourth Circuit's holding in *Hooters of America v. Phillips*, 173 F.3d 933 (4th Cir. 1999), in support his argument that AOUSC's unilateral selection of an arbitrator is so unfair that it does not provide an effective means of vindicating his Title VII rights. In *Hooters*, the Fourth Circuit invalidated an arbitration agreement that it found "so one-sided that [its] only possible purpose [was] to undermine the neutrality of the proceeding." *Id.* at 938. The *Hooters* Court explained that the arbitrator the selection process in the agreement "[was] crafted to ensure a biased decisionmaker," and it described the selection procedure as follows:

> The employee and Hooters each select an arbitrator, and the two arbitrators in turn select a third. Good enough, except that the employee's arbitrator and the third arbitrator must be selected from a list of arbitrators created exclusively by Hooters. <u>This gives Hooters control over the entire panel and places no limits whatsoever on whom Hooters can put on the list. Under the rules, Hooters is free to devise lists of partial arbitrators who have existing relationships, financial or familial, with Hooters and its management.</u> In fact, the rules do not even prohibit Hooters from placing its managers themselves on the list.

Id. at 938-39 (emphasis added).

The Fourth Circuit thus declared that, "[b]y promulgating [a] system of warped rules, Hooters so skewed the process in its favor that Phillips has been denied arbitration in any meaningful sense of the word." *Id.* at 941.

*See also Murray v. United Food & Commercial Workers Intern. Union*, 289 F.3d 297, 303 (4th Cir. 2002) (agreement to arbitrate is unconscionable when employee was required as a condition of employment to enter into arbitration agreement that placed control over selection of the single arbitrator for employment disputes solely in the hands of employer).

15

## Conclusion

Wherefore, Plaintiff Garcia Allen requests that this Court deny Defendant Leonidas Ralph Mecham's Motion to Dismiss in Lieu of an Answer. Plaintiff Allen further requests that the Court declare, as a matter of law, that Defendant Administrative Office of United States Courts' unilateral and unrestricted selection of a hearing officer, as mandated under Chapter I, § F.8. of its FEPS Human Resources Manual, violated of Mr. Allen's procedural due process rights provided under the Fifth Amendment to the U.S. Constitution.

                                                        Respectfully submitted,
                                                        Garcia Allen
                                                        *By Counsel*

_____
R. Scott Oswald, Esq.
Nicholas Woodfield, Esq.
EMPLOYMENT LAW GROUP, PLLC
888 17th St. NW
Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
nwoodfield@employmentlawgroup.net
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff Garcia Allen's Opposition to Defendant's Motion to Dismiss in Lieu of an Answer was served via the Electronic Case Filing system on this the 1st day of September, 2005, upon:

Mercedeh Momeni, Esq.
Assistant United States Attorney
555 Fourth St., N.W., Civil Division
Washington, D.C. 20530
Mercedeh.Momeni@usdoj.gov

_____
Nicholas Woodfield